UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBERT WILLIAMS,
   Plaintiff,

vs.

STEPHEN WILLIAMS,
   Defendant.

Case No. 1:19-cv-00489
Cole, D.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff, an inmate currently incarcerated at the Ross Correctional Institution, brings this pro se civil rights action under 42 U.S.C. § 1983 alleging violations of his constitutional rights by prison employee Stephen Williams while plaintiff was an inmate at the Lebanon Correctional Institute (LeCI). Plaintiff was granted leave to proceed *in forma pauperis* and the complaint was filed on July 23, 2019. (Doc. 4). This matter is before the Court on defendant's motion for summary judgment addressing exhaustion only (Doc. 17), plaintiff's response in opposition (Doc. 20), and defendant's reply (Doc. 21).

According to the complaint, plaintiff began writing "informal complaints" at LeCI due to "constant harassment" by defendant Williams and other officers who worked with him at LeCI. (Doc. 4 at PAGEID 5). After "one of [defendant's] officers" wrote a false conduct report on plaintiff, he was given a hearing "and consequence" and then sent back to his cell on the morning of July 5, 2017. (*Id.* at PAGEID 5). Plaintiff alleges that as a result of the complaints he had filed, plaintiff was called back out to the A-block sergeant's office an hour later and defendant Williams beat plaintiff up while other officers held him down. (*Id.*). Due to the beating, plaintiff suffered a broken shoulder and lost teeth, he required stitches in his hand, and a specialist diagnosed him with post-traumatic stress disorder for which he currently takes medication. (*Id.*).

Plaintiff alleges that he presented the facts relating to his complaint in the prisoner grievance procedure. (*Id*. at PAGEID 3). He asserts that on July 9, 2017, he "began the process of documentation of constant harassment and corrupt activity." (*Id*.). He claims that the "result was that [defendant Williams] denied all allegations." (*Id*.).

Defendant moves for summary judgment on the ground plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") before filing his action in this Court. (Doc. 17). Defendant asserts that plaintiff has submitted fraudulent documents that are not legitimate records of the Ohio Department of Rehabilitation and Correction (ODRC) to attempt to show he exhausted his administrative remedies. Defendant contends there is no genuine factual dispute that plaintiff has not completed any steps of the prison grievance procedure, and defendant is therefore entitled to summary judgment as a matter of law.

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295 F.3d at 615;

2

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but it is to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'" *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter his duty to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp.2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*,

3

375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

### III. Exhaustion of Administrative Remedies

#### A. Legal Standard

Exhaustion of administrative remedies "is mandatory under the [PLRA] and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "[A] prisoner confined in any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones*, 549 U.S. at 216). "[T]he failure to exhaust 'must be established by the defendants.'" *Id.* (quoting *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)). Thus, defendants bear the burden of proof on exhaustion. *Id.* Defendants are entitled to summary judgment only if they "establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

4

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). To properly exhaust a claim, prisoners must "tak[e] advantage of each step the prison holds out for resolving the claim internally" and follow the "'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). "Proper exhaustion [further] demands compliance with an agency's deadlines. . . ." *Woodford*, 548 U.S. at 90.

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Admin. Code § 5120-9-31, involves a three-step process. First, the inmate is required to file an informal complaint with the direct supervisor of the staff member involved within 14 days of the event giving rise to the complaint. Ohio Admin. Code § 5210-9-31(J)(1)[1]. Staff shall respond within seven days of receipt of the informal complaint. *Id*. Second, if the inmate is dissatisfied with the response to his informal complaint, or the informal complaint process has been waived, he may file a notification of grievance with the inspector of institutional services. Ohio Admin. Code § 5120-9-31(J)(2). The inmate must file a grievance within 14 days from the date of the informal complaint response or waiver of the informal complaint step. *Id*. The inspector of institutional services shall provide a written response within 14 days of receipt of the notification of grievance, and the time to respond may be extended by 14 days with notice to the inmate. *Id*. If the inmate is dissatisfied with the response, he may undertake the third step of the grievance

---

[1] Ohio Admin. Code § 5210-9-31 was modified effective January 9, 2020. The provisions that are now found at Ohio Admin. Code § 5120-9-31(J)(1)-(3) were previously codified at Ohio Admin. Code § 5120-9-31(K)(1)-(3). The administrative grievance provisions that are relevant to this case were not substantively modified.

process by filing an appeal with the office of the chief inspector within 14 days of the disposition of the formal grievance. Ohio Admin. Code § 5120-9-31(J)(3). The chief inspector shall provide a written response within 30 days of receipt of the appeal. *Id*. The chief inspector may waive the filing or response time limits for good cause. *Id*.

### B. Defendant's evidence

Defendant has presented the affidavit of Eugene Hunyadi, an Assistant Chief Inspector with the ODRC, to support his claim that plaintiff failed to exhaust his administrative remedies after defendant's alleged assault of plaintiff on July 5, 2017. (Doc. 17-2). In his affidavit, Hunyadi states that his job duties include handling appeals filed by inmates under Ohio Admin. Code 5120-9-31 and direct grievances filed with the Office of the Chief Inspector of ODRC under 5120-9-30. (*Id*., ¶ 2). Hunyadi states that he also serves as custodian of the records of these appeals and direct grievances. (*Id*.). Hunyadi asserts that he reviewed plaintiff's entire grievance history and found some instances where plaintiff successfully completed all three steps of the inmate grievance procedure and exhausted his administrative remedies. (*Id*., ¶ 13). However, Hunyadi's review disclosed that plaintiff failed to exhaust his administrative remedies relating to the alleged incident on July 5, 2017. (*Id*., ¶ 11). Specifically, plaintiff did not complete the first step by filing an informal complaint; he did not file a notification of grievance as the second step requires; and he never filed an appeal with the Office of Chief Inspector as required to complete the third and final step. (*Id*., ¶ 11). Hunyadi states that grievance documents previously submitted by plaintiff as evidence in this case are not legitimate ODRC grievance records, and they were not found in the prior DOTS (Departmental Offender Tracking

6

System) or the new electronic system that "went live" on July 11, 2017.  (*Id.*, ¶ 12, citing Doc. 12 at PAGEID 71-73, Exh. A).

### C. Plaintiff's response

Plaintiff filed an "Affidavit Rebuttal for Defendant's Motion of Summary Judgment" in response to defendant's motion for summary judgment.  (Doc. 20).  Although plaintiff's assertions are difficult to decipher, plaintiff appears to allege he complied with the grievance procedure and exhausted his administrative remedies.  (Doc. 20 at PAGEID 4).  Plaintiff states he sent many "kites" and "ICR's" (informal complaint resolutions) claiming harassment, which led to a request for grievance forms from the Institutional Inspector.  (*Id.*).  Plaintiff alleges that the Institutional Inspector would not have sent the "form" in response to his requests if the proper procedure was not followed.  (*Id.*).  Plaintiff claims that his complaints should have been taken seriously enough to "automatically start" a use of force investigation.  (*Id.*).

### D. Summary judgment should be granted in defendant's favor

The unrefuted evidence shows that plaintiff did not exhaust his administrative remedies related to the July 5, 2017 alleged use of force incident prior to filing this lawsuit.  In his sworn affidavit, Hunyadi attests that plaintiff did not file a grievance related to that incident.  (Doc. 17-2, ¶ 11).  Hunyadi states that the two ICRs and the notification of grievance that plaintiff has produced in this case are not "legitimate grievance records of ODRC" but are instead "fraudulent imitations."  (*Id.*, ¶ 12).  Hunyadi states that no record of these complaints was found upon a thorough review of the ODRC records.  (*Id.*, ¶¶ 11, 12; *see also* Doc. 17-1).

Plaintiff has not provided any evidence that rebuts Hunyadi's affidavit and shows there is a genuine issue of material fact as to whether plaintiff exhausted his administrative remedies.

Plaintiff states in his "affidavit" that he has "personal knowledge of the facts stated herein." (Doc. 20 at PAGEID 2). However, plaintiff's "affidavit" is replete with general statements of law, legal conclusions, and speculative assertions that do not set forth facts within plaintiff's personal knowledge.[2] (*Id*.). To the extent plaintiff's "affidavit" includes these types of statement, the "affidavit" does not comport with Rule 56's requirements that an affidavit "used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). *See also Nilles v. Givaudan Flavors Corp.*, 521 F. App'x 364, 371 (6th Cir. 2013) (quoting *Hedberg v. Ind. Bell Tel. Co., Inc.,* 47 F.3d 928, 932 (7th Cir. 1995) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment")).

Plaintiff's "affidavit" does include a handful of statements that are based on plaintiff's first-hand knowledge. Plaintiff states that he is "fully aware of how to exhaust" the grievance procedure; he asserts that throughout his years of incarceration, he had not previously made a claim of being physically assaulted by an officer; and he indicates that he had filed numerous "kites" and ICRs and had requested grievance forms from the institutional inspector. (*Id*. at PAGEID 4). Accepting these assertions as true, they are nonetheless insufficient to create a genuine factual dispute as to whether plaintiff exhausted his administrative remedies for the July

---

[2] Examples of such statements in the affidavit are: "The Affidavit of Eugene Hunyadi is hereby rebutted on the ground of frivolous presumptions and erroneous assertions."; The institutional inspector "wouldn't have sent the [grievance] form [to plaintiff] if the proper procedure wasn't followed."; and "If Eugene Hunyadi couldn't find the necessary filings on his records, liability falls on the institutional inspector putting forth efforts to conceal material evidence." (Doc. 20 at 4).

8

5, 2017 incident. Plaintiff does not allege that he completed the three steps of the grievance process related to defendant's alleged use of force on July 5, 2017 by timely filing an informal complaint, a notification of grievance, and an appeal to the chief inspector complaining about defendant's actions on that date.

Further, the three administrative complaints that plaintiff has submitted with his response to defendant's motion for summary judgment do not create a genuine issue of fact on the non-exhaustion of plaintiff's administrative remedies.[3] (Doc. 20 at PAGEID 7-9). These complaints are a notification of grievance dated June 23, 2017; an ICR dated June 13, 2017; and an ICR dated July 10, 2017. (*Id*.). Both June 2017 complaints predate the July 5, 2017 incident and do not pertain to defendant's alleged use of force which occurred the following month. (*Id*. at PAGEID 7-8). Plaintiff indicated in the notification of grievance dated June 23, 2017, that he had filed an "informal complaint" with defendant Williams on June 9, 2016, more than one year earlier. (*Id*.) Plaintiff stated he was making the current complaint to begin "the process of documenting the ongoing incidents of racial discrimination and inappropriate supervision being displayed" by defendant Williams. (*Id*.). Plaintiff complained that he had previously written complaints and grievances that had not been answered or returned. (*Id*.). Plaintiff indicated he would like to be moved back to his prior housing block and he wanted defendant to "leave me alone." (*Id*. at PAGEID 7). Plaintiff wrote in the ICR dated June 13, 2017 that defendant was harassing him because he had "written defendant up" for racial discrimination, and defendant and others had threatened plaintiff. (*Id*. at PAGEID 8). The "Action Taken" section of the form

---

[3] Plaintiff previously attached these documents to an "Explanation Sheet for Commercial Affidavit in Support of Commercial Lien," which he filed on January 30, 2020. (Doc. 12 at PAGE ID 14-16, 75-77). The Court construed the document as a motion for default judgment, which it denied. (Docs. 25, 28).

9

is blank, and the form is not signed by a staff member. Because these two complaints predate and are not related to the July 5, 2017 incident, they do not create a genuine issue of disputed fact as to whether plaintiff exhausted his administrative remedies.

The ICR dated July 10, 2017 is the only complaint that post-dates and relates to the alleged use of force on July 5, 2017. (*Id.* at PAGEID 9). The form was purportedly submitted to the "1st Shift Captain." (*Id.*). Plaintiff complained that he and defendant got into an argument when defendant read a false conduct report, and plaintiff refused to sign a ticket after instead asking that the matter be referred to the Rules Infraction Board (RIB). (*Id.*). Defendant allegedly denied plaintiff's request and threatened plaintiff as he walked to his cell before bumping plaintiff into his cell with his stomach and slamming the cell door. (*Id.*). Plaintiff alleged that he asked to see mental health personnel for advice, but his request was denied at that time. (*Id.*). Later, plaintiff was allegedly called out of his cell and "ambushed" and beaten by defendant and other officers. (*Id.*). Plaintiff wrote that he was asking for the camera footage. (*Id.*). No writing is visible in the "Action Taken" section of the ICR attached to plaintiff's response to the motion for summary judgment, and it is not dated.[4] (*Id.*). The form includes a signature in the space for "Staff member's signature and title," but the name of the staff member is not legible. (*Id.*).

The July 10, 2017 ICR is not competent evidence that is sufficient to create a genuine issue of fact on non-exhaustion of administrative remedies because there is no evidence that plaintiff ever submitted the ICR to a prison employee. Hunyadi attests that none of the three

---

[4] A copy of the same form is found in Doc. 12. Writing is visible in the "Action Taken" section of the ICR, which reads: "Sgt. Williams has been Questioned and denies, all allegations against him." (*Id.* at PAGEID 75). That copy is dated next to the signature line, but the date is not legible. (*Id.*).

complaints that plaintiff has submitted to the Court are legitimate ODRC records because they were not found on review of ODRC's "Offender Tracking System Portal" and its new electronic system that "went live" on July 11, 2017. (Doc. 17-2, ¶ 12; *see also* Doc. 17-1). Further, the July 10, 2017 ICR does not appear in the ODRC records that reflect plaintiff's grievance history. (Doc. 17-2, Hunyadi Aff., ¶ 12; Doc. 17-1). Plaintiff has not submitted any evidence that refutes defendant's evidence and shows that plaintiff filed the July 10, 2017 ICR he has submitted to the Court. Plaintiff simply speculates that if Hunyadi could not find records of plaintiff's complaints, it was because the institutional inspector tried to "conceal material evidence." (Doc. 20 at PAGEID 4). Plaintiff's unsupported and speculative assertions are insufficient to create a genuine issue of material fact. *See Nilles*, 521 F. App'x at 371 (quoting *Hedberg,* 47 F.3d at 932) ("Speculation does not create a *genuine* issue of fact. . . .").

Further, even assuming plaintiff did submit the ICR related to defendant's alleged use of force on July 5, 2017 to prison authorities, there is no indication in the record that plaintiff completed the second and third steps of the grievance process by filing a notification of grievance and an appeal from the disposition of his grievance to the chief inspector. The exhibits do not include a notification of grievance or an appeal to the chief inspector from the disposition of the ICR, and ODRC records do not reflect any such filings related to the ICR and the July 5, 2017 incident.

Thus, defendant has carried his burden to show that plaintiff did not exhaust his administrative remedies for his claim based on defendant's alleged use of force on July 5, 2017. Plaintiff does not claim that exhaustion would have been futile or that he has any other valid

11

excuse for failing to timely exhaust his administrative remedies. Defendant is therefore entitled to summary judgment based on plaintiff's failure to exhaust his administrative remedies.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Defendant's motion for summary judgment (Doc. 17) be **GRANTED** for failure to exhaust administrative remedies under 42 U.S.C. § 1997e. Plaintiff's complaint should be **DISMISSED** without prejudice.

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of this Court's Order would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 12/29/2020

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| ROBERT WILLIAMS,<br>    Plaintiff, | Case No. 1:19-cv-00489<br>Cole, D.<br>Litkovitz, M.J. |
| vs. | |
| STEPHEN WILLIAMS,<br>    Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. This period may be extended further by the Court on timely motion by either side for an extension of time. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).