# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**ROBERT WILLIAMS,**

    **Plaintiff,**

    v.

**STEVEN WILLIAMS,**

    **Defendant.**

Case No. 1:19-cv-489
JUDGE DOUGLAS R. COLE
Magistrate Judge Litkovitz

## OPINION AND ORDER

This cause is before the Court on: (1) Defendant Officer Steven Williams's First Motion for Summary Judgment (Doc. 17), which is based on Plaintiff Robert Williams's alleged failure to administratively exhaust the claims that he presses in this suit, as required by 42 U.S.C. § 1997e; (2) the Magistrate Judge's Report and Recommendation ("R&R") (Doc. 29), which recommends that this Court should grant Steven's[1] Motion and, accordingly, dismiss Robert's Complaint without prejudice; and (3) Robert's Objection (Doc. 31) to that R&R. For the reasons discussed below, the Court **ADOPTS** the R&R (Doc. 29) in full, **OVERRULES** Plaintiff's Objection (Doc. 31), and **GRANTS** Defendant's First Motion for Summary Judgment (Doc. 17), thereby **DISMISSING** the Complaint in this action **WITHOUT PREJUDICE**. The Court further certifies pursuant to 28 U.S.C. § 1915(a)(3) that for the reasons discussed below an appeal of this Court's Order would not be taken in good faith.

---

[1] Ordinarily, the Court would refer to a party by his or her last name. But following that practice in this Opinion would create confusion because both parties share the same last name: "Williams." Accordingly, the Court will refer to both parties by their first names and hope that neither party takes offense at that choice.

## BACKGROUND

Robert is an inmate incarcerated at the Ross Correctional Institution, though he was incarcerated at the Lebanon Correctional Institute ("LeCI") when the relevant facts in this case occurred. On July 1, 2019, Robert filed this suit against Steven—an officer at LeCI—seeking monetary damages. Robert alleges in his Complaint (Doc. 4) that he began writing "informal complaints" at LeCI "[d]ue to constant harassment by [O]fficer Steven Williams and officers who worked with him." (Compl., Doc. 4, #36). Robert claims that, because of those complaints, Steven assaulted him on the morning of July 5, 2017. Steven now moves for summary judgment, arguing that Robert has failed to exhaust his administrative remedies.

In her R&R (Doc. 29), the Magistrate Judge explains that there is a three-step administrative process for resolving inmate complaints in Ohio. First, within fourteen days of the event, the inmate is required to file an informal complaint with the direct supervisor of the staff member about whom the inmate is complaining. Ohio Admin. Code § 5120-9-31(J)(1). Second, if the inmate is unsatisfied with the response to his informal complaint, he may file a formal grievance with the inspector of institutional services at his institution of confinement. Ohio Admin. Code § 5120-9-31(J)(2). The inspector of institutional services is required to provide a written response to the inmate's grievance within fourteen calendar days of receiving the grievance. *Id.* If the inmate is dissatisfied with the response, he may undertake the third step of the grievance process and file an appeal to the office of the chief inspector of the Ohio Department of Rehabilitation and Correction ("ODRC"). Ohio Admin. Code § 5120-9-31(J)(3). Before suing in federal court, the prisoner must "exhaust[]

2

all of his administrative appellate rights with respect to the grievance." *Carter v. Sheets*, No. CIVA 2:06CV918, 2006 WL 3692927, at *1 (S.D. Ohio Dec. 13, 2006) (citing *Wright v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997)).

As the Magistrate Judge notes, Steven attaches the affidavit of Eugene Hunyadi, an Assistant Chief Inspector at ODRC, to support Steven's motion for summary judgment. In his affidavit, Hunyadi states that he reviewed Robert's entire grievance history and found some instances where Robert successfully completed all three steps of the inmate grievance procedure. But Hunyadi's review indicated that Robert did not complete *any* of the three steps in connection with the alleged July 5, 2017, incident. In other words, according to Hunyadi, Robert did not file an informal complaint, did not file a notification of grievance with the institutional inspector of LeCI, and never filed an appeal with the office of chief inspector.

Robert, for his part, filed what appears to be a combined affidavit and response brief in opposition to Steven's summary-judgment motion. (*See* Doc. 20). (For simplicity's sake, the Court will refer to this document as Robert's affidavit.) Robert's affidavit contains many irrelevant (and occasionally nonsensical) assertions of purported law and fact. Here's a sampling:

> [A]ny action/complaint/transaction initiated by state/federal agents are commercial in nature, in light of the fact that they impose a quasi-monitary [sic] fine in violation of Article 1, 10 & Article 11, 1 and the United States Bankruptcy.
>
> On April 14, 1802, the actual United States in congress assembled and passed the United States Statute-at-Large 2, 153, Chapter 28, Subsection 1: The actual government of, for, and by the people clearly defined the necessary process for any American to ever become a United States Citizen—that is, a British Subject/Slave merely residing on the

3

> land of the United States—a process requiring multiple notices and conscious acts by consenting adults confined by public officials and on the public record over a period of two years—not an undisclosed "implied" contact foisted off under conditions of deceit upon bribes in their cradles and women recovering from childbirth.

(Robert's Combined Aff. and Br., Doc. 20, #194).

Robert's affidavit nonetheless does seem to at least suggest that he complied with the three-step grievance procedure, thereby exhausting his administrative remedies. Robert alleges that he submitted many informal complaints claiming harassment, which led to him requesting (and receiving) "[g]rievance forms" from the institutional inspector. (*Id.* at #196). Robert reasons that the institutional inspector would not have sent Robert those forms had Robert not followed the proper procedure. Robert argues that if "Hunyadi couldn't find the necessary filing [i]n [Robert's] records, liability falls on the institutional inspector putting forth efforts to conceal material evidence." (*Id.*).

In addition to these statements, Robert's affidavit also attaches one informal complaint dating to June 13, 2017, one grievance notification dating to June 23, 2017, and another informal complaint dating to July 10, 2017. Only the last informal complaint postdates and discusses the alleged July 5, 2017 incident. There, Robert details the circumstances and nature of the assault that he allegedly suffered at the hands of Steven and other officers.

Hunyadi apparently anticipated that Robert would attach these documents and Hunyadi addressed them in his affidavit. (He was able to do so because Robert had already produced the documents earlier in the litigation.) In his affidavit,

4

Hunyadi states that "[n]either the informal complaints dated 6/13/17 and 7/10/17 nor the grievance dated 6/23/17 are legitimate grievance records of ODRC and are, instead, fraudulent imitations." (Hunyadi's Aff., Doc. 17-2, #187). That is because, according to Hunyadi, "[n]o record was found" during his review of both "the previous DOTS system (Departmental Offender Tracking System)" and "the new electronic system that [went] live on July 11, 2017." (*Id.*).

The Magistrate Judge agrees with Steven that the three administrative complaints attached to Robert's affidavit do not create a genuine issue of fact as to exhaustion. According to the Magistrate Judge, that is because the notification of grievance dated June 23, 2017, and the informal complaint dated June 13, 2017, predate (and thus do not discuss) the alleged July 5, 2017, incident. And while the July 10, 2017 informal complaint *does* postdate (and discuss) the alleged incident, the Magistrate Judge does not consider that informal complaint to be "competent evidence." (R&R, Doc. 29, #294). The Magistrate Judge based that conclusion on Hunyadi's review of ODRC's Offender Tracking System Portal, which indicated that none of the complaints were legitimate.

In the Magistrate Judge's view, Robert has not submitted any evidence to refute Hunyadi's testimony about the alleged inauthenticity of the complaints. But "even assuming" the July 10, 2017, informal complaint was legitimate and that Robert "did submit [it] … to prison authorities," the Magistrate Judge reasons that there is no indication in the record that Robert "completed the second and third steps of the grievance process." (R&R, Doc. 29, #295). The Magistrate Judge observes that

5

"[t]he exhibits do not include a notification of grievance [about the July 5, 2017, alleged incident] or an appeal to the chief inspector from the disposition of the [informal complaint]." (*Id.*). Nor do "ODRC records … reflect any such filings related to the [informal complaint] and the July 5, 2017 incident." (*Id.*). Thus, concludes the Magistrate Judge, even if the July 10, 2017, informal complaint is evidence of Plaintiff having completed step one of the three-step administrative process, it is indisputable that Plaintiff failed to complete steps two and three.

Consistent with the Magistrate Judge's reasoning, the Magistrate Judge recommends granting Steven's First Motion for Summary Judgment (Doc. 17). And, because the summary judgment is based on failure to exhaust administrative remedies, *see* 42 U.S.C. § 1997e, the Magistrate Judge further recommends that the Complaint should be dismissed without prejudice, to allow for such exhaustion. The Magistrate Judge also recommends that this Court certify, under 28 U.S.C. § 1915(a)(3), that an appeal of this Order would not be taken in good faith.

Robert has filed objections to the Magistrate Judge's Report and Recommendation, and the matter is now ripe for the Court's decision.

## LEGAL STANDARD

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed R. Civ. P. 72(b). Upon review, the Court "may accept,

6

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

"The 'party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *See, e.g.*, *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). But the non-moving party cannot defeat a motion for summary judgment merely by pointing to any factual dispute. As the Sixth Circuit has explained, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (bracket omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

## LAW AND ANALYSIS

Robert begins his objections by addressing the ground on which the Magistrate Judge recommends granting Steven summary judgment: failure to exhaust. Robert points to the (possibly fake) informal complaint documenting the alleged July 5, 2017 assault, and seems to acknowledge that submitting such a complaint (assuming it is legitimate) was just the first step in the three-step-grievance procedure. But then Robert offers an excuse for why he never followed through with the second and third steps of the process. Robert explains that "the procedure was never exhausted"

7

because the institutional inspector never gave Robert the paperwork he needed to complete those steps. (Robert's Objection, Doc. 31, #303). Indeed, according to Robert, the institutional inspector and Steven's direct supervisor were colluding "with each other to make sure … [Robert] couldn't exhaust the procedure." (*Id.* at #304).

Robert then seems to change his story. He alleges that another (or, perhaps, an *additional*) reason he did not complete the grievance procedure is because of a change to the grievance-procedure system that occurred a few days after the alleged incident. According to Robert, LeCI switched to an electronic system for "all grievances" on July 11, 2017. After the switch, LeCI handpicked two inmates to attend a two week-tutorial on how to use the new system. And, after that, those two inmates were tasked with teaching the rest of the inmates on their blocks (over two hundred) on how to use the system. Because the rest of the inmates were allegedly trained in the alphabetic order of their last names, and because Robert's last name is "Williams," Robert claims that he was among the last of the inmates trained on how to use the new system. As a result, Robert claims he did not learn how to use the new grievance process until it was too late to exhaust his claims.

This Court need not (and so does not) reach a decision on whether either of these reasons creates a genuine issue of material fact as to whether Robert failed (or is excused from failing) to exhaust his claims. That is because Robert mentions them for the first time in his Objection to the Magistrate Judge's Report and Recommendation. They were not included in the affidavit or any other papers Robert submitted in opposing Steven's motion for summary judgment. In fact, Robert said

8

the opposite in opposing summary judgment—he said he *had* complied with the grievance procedure and exhausted all of his remedies. (Robert's Combined Aff. and Br., Doc. 20, #194). If Hunyadi couldn't find any records of him, Robert explained, then that must have been because the institutional inspector concealed the evidence. (*Id.*).

It is black-letter law in the Sixth Circuit that, "[w]hile the Magistrate Act, 28 U.S.C. § 631 et seq., permits de novo review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 907 n.1 (6th Cir. 2000); *see also Quisenberry v. Adams*, No. 20-6069, 2020 WL 8879749, at *4 (6th Cir. Dec. 17, 2020); *Birdsong v. United States*, No. 19-6181, 2020 U.S. App. LEXIS 3732, at *6-7 (6th Cir. Feb. 6, 2020); *Moore v. USDA*, No. 17-5363, 2018 WL 1612299, at *2 (6th Cir. Jan. 31, 2018).

As Robert has not provided this Court *any* reason, let alone a *compelling* reason, to excuse this forfeiture, the Court will not do so. To hold otherwise would not just flout Sixth Circuit precedent, but also undermine the key role that Magistrate Judges play in our federal judicial system—"to assume some of the burden imposed [on the district courts] by a burgeoning caseload." *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988) (quoting *Chamblee v. Schweiker*, 518 F. Supp. 519, 520 (N.D. Ga. 1981)). "In addition, it would be fundamentally unfair to permit a litigant to set [his or her] case in motion before the magistrate, wait to

9

see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge." *Id.*

Robert's other objections are likewise unavailing. Among other things, Robert alleges the following: (1) Robert "summoned" Steven's "oath of office," but Steven never produced it; (2) earlier in the litigation, Steven requested a 60-day extension to respond to a document (Robert does not say which one), but it ended up taking Steven six months to respond; (3) "ODRC and its staff at most institutions could care less about the safety and well being of its inmates"; (4) unnamed officers have planted fake drugs on Robert twice; (5) an officer "inserted a finger in [Robert's] rectum swearing he had something in there and then refuse[d] to take [Robert] to the hospital"; (6) LeCI has a history of "beating and even killing inmates and trying to cover it up"; and (7) it would be an injustice for the Court to deny Robert relief based on "a minor technicality" (referring to the exhaustion requirement) when the reasons for his non-compliance were "out of [his] control" (referring to the excuses he makes regarding exhaustion earlier in his objections). (Objection, Doc. 31, #304–06).

These allegations don't help Robert's cause. They are conclusory and, as a result, unworthy of credence as a matter of law. Many are simply irrelevant to resolving the exhaustion issue. More fundamentally, *none* were presented to the Magistrate Judge. Again, that means Robert cannot rely on them now in challenging the Magistrate Judge's R&R.

The remainder of Robert's objections just rehash his allegations on the merits against Steven. There are two problems with that. First, "the Court will not consider

10

an objection that simply rehashes arguments made before the magistrate judge." *Parker v. Comm'r of Soc. Sec.*, No. 2:20-CV-10961, 2021 WL 3508557, at *3 (E.D. Mich. Aug. 10, 2021) (citing *Hofer v. Comm'r of Soc. Sec.*, No. 17-12526, 2018 WL 4568805, at *1 (E.D. Mich. Sept. 24, 2018)). That is because it is the objecting party's obligation to identify alleged *errors* in the Magistrate Judge's analysis, not merely press the same arguments already presented the Magistrate Judge in hopes of a different decision here. Second, the merits of Robert's claims are irrelevant to the exhaustion issue, which is the only issue before the Court.

At the end of the day, Robert has failed to create a genuine dispute of material fact as to whether he properly exhausted his claims. The evidence overwhelmingly shows he did not properly exhaust his claims even though he could have. Nothing Robert says in his objections causes the Court to doubt the conclusions that the Magistrate Judge reached in her R&R. Steven is therefore entitled to summary judgment on all of Robert's claims.

## CONCLUSION

For the reasons above, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation (Doc. 29); **OVERRULES** Robert's Objection (Doc. 31); and **GRANTS** Steven's First Motion for Summary Judgment (Doc. 17). Accordingly, the Court **DISMISSES** the Complaint (Doc. 4) **WITHOUT PREJUDICE**. The Court **DIRECTS** the Clerk to enter judgment accordingly and to **TERMINATE** this case on the Court's docket. The Court further **CERTIFIES**, under 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith.

**SO ORDERED.**

September 27, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**